# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

        v.

BRIAN A. ANNORENO,

      Defendant.

No. 06 CR 33 - 1
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

The matter here is whether all of Brian Annoreno's statements to law enforcement officers are admissible. On January 8, 2006, agents, with appropriate warrants, searched his residence and arrested him for child pornography offenses. He came into custody at 3:40 in the afternoon, was transported to the Bartlett, Illinois Police Department where he was given Miranda warnings and, shortly before 4:00 p.m., signed a Miranda waiver form. He answered questions while interviewed by two officers - one from the Illinois Attorney General's Office and another from Immigration and Customs Enforcement ("ICE"), a unit within Homeland Security.

He received another set of warnings around 9:00 p.m. from the same two officers at the outset of a videotaped interview. At 9:55 a third set of warnings was given by two Bartlett officers at the beginning of a separate videotaped interview.

He was, I find, fully cooperative with the investigation and knew and understood his rights. This is plainly clear from his attitude during questioning, from the short written statement he gave, and from the dynamics of the investigation. It is apparent that the law enforcement officers, investigating a particularly aggravated case of child exploitation, did not think of Annoreno as a primary ringleader of a group of offenders. Having observed Annoreno in court

and seen and heard the evidence at the hearing, it would be hard to conclude he had the skills or presence to serve as a kingpin of anything. I find it also true that his interviewers did not believe that incriminating admissions were crucial to proving the charges in light of the evidence they had found. They were interested in finding the others associated with this criminal enterprise (and their child victims), and Annoreno, whose own sense of guilt and shame was palpable at the hearing, wanted to help them. His entire course of conduct evinced this attitude. Within three or four hours of his arrest, he signed a waiver (without time limits) of his *McNabb-Mallory* rights embodied in Federal Rule of Criminal Procedure 5. The waiver form stated that he "knowingly and intelligently" waived his rights to appear without unnecessary delay before a judge "for the purpose of assisting Special Agents of the United States Customs Service." Within five hours of arrest he signed a consent to search his online accounts. About nine hours after his arrest he began writing a handwritten statement and shortly thereafter signed another consent form with respect to additional online accounts. It was then about midnight, and he was transported to the ICE office after a stop for food. He was put into a cell at 3:15 in the morning of January 9.

The officers used information obtained from Annoreno to get a warrant to search the residence of another person and seize that person's computer.

In the late afternoon of that day, ICE agents went to Annoreno's cell and showed him a digital image from the other person's computer. Annoreno identified the very young child in the image and the camera used to make the image and then stated that he had sent that image. He signed the copy of the image. Around midnight, he called his mother and spoke to her. He spent the night in the cell.

In the late afternoon of January 10, two ICE agents interviewed Annoreno about his knowledge of a particular chat room and its participants. He also signed another waiver of this right to appear; this one limited to 72 hours. Annoreno again spoke to his mother.

He made his initial appearance on January 13.

The admissibility of all of his statements is challenged, but I find that he was competent to waive his *Miranda* rights on January 8, and that he did so voluntarily and intelligently on multiple occasions. He never asked for counsel. He did ask to speak to his mother, but the law does not require that interrogation cease when an arrestee like Annoreno asks to speak to a relative or friend. *See Fare v. Michael C.,* 442 U.S. 707, 724 (1979) (statements not suppressed where police denied suspect's request to speak with his probation officer) and *State v. Jones,* 566 N.W.2d 317, 324 (Minn. 1997) ("a juvenile's request to speak with a parent does not automatically invoke either the right to an attorney or the right to remain silent"). A denial of the right could be relevant to the issue of voluntariness. *See Haynes v. Washington,* 373 U.S. 503 (1963). But in this case, the agents did not deny him this right. They told him he could call his mother later, but he never renewed his request. Given the evidence I heard, there is no basis to conclude that his statements were involuntary for this or any other reason. He did, after all, speak to his mother on January 9, and still cooperated in interviews on the next day. From Annoreno's own account of his conversations with his mother, he had no intention of telling her the truth about his circumstances. I fully understand why he would be reluctant to tell what he had apparently done with her grandchild. He told her instead that he was helping the police.

I also find that all of his interviews with the police were fully voluntary.  He wanted to tell them what he knew, and he was telling his mother the truth when he said he was helping the police.

No matter how voluntary the later statements (January 9 and 10) may be, they cannot be admitted if his rights under *Miranda* or *McNabb-Mallory* were violated.

**Rights under *Miranda***

There were no rewarnings here, and the cases have held that rewarning is not necessary in all situations.  *See Wyrick v. Fields,* 459 U.S. 42 (1982); *United States v. Banner,* 356 F.3d 478, 480 (2d Cir. 2004), *vacated on other grounds*, 543 U.S. 1100 (2005); *United States ex rel. Henne v. Fike,* 563 F.2d 809, 814 (7th Cir. 1977).  The reported decisions analyze the need for rewarning on a case-by-case basis.  The principal factor considered is the passage of time, but there is no accepted *per se* rule about how long is too long.[1]  *United States v. Pruden,* 398 F.3d 241, 246-47 (3d Cir. 2005) identified the question as one of whether the original warnings had grown "stale."  It is a good way to think about the issue.

When a series of interviews addresses the same basic facts in the same way for the same purpose, initial warnings may suffice for quite a long period of time.  Another way to put it is to ask if the ambience of the interviews changed.  Were the working relationships between the agents and the arrestee consistent over time; did simple inquiry turn into harsh accusation; were

---

[1] *United States v. Pruden,* 398 F.3d 241, 247 (3d Cir. 2005) (twenty-hour lapse between questioning sessions is in upper end of permissible range); *United States v. Clay*, 408 F.3d 214, 221-22 (5th Cir. 2005) (two-day interval between Miranda warning and admission does not invalidate waiver); and *Maguire v. United States*, 396 F.2d 327 (9th Cir. 1968) (three-day interval between Miranda warning and interrogation does not invalidate warning).

new subjects brought up suddenly and new psychological ploys attempted or did the renewed sessions simply follow on with tone and tenor of the first?

In this case I find that Annoreno did want to tell the agents what he had done, to impress them with his belief that, despite all, he wanted to be a good father to his daughter (which is what he wrote in his statement) and wanted to impress them with his willingness to assist. I find that the agents accepted these terms. In light of what he was willing to tell them, it would have been very poor police work not to accept them. The second interview was devoted to his assisting the agents with their case against another person and to clarifying Annoreno's role in producing some images of child pornography. It did not alter the scope of the subjects of the first interview which led to the warrant against the other person's computer. The third interview sought more information about the child pornography chat room and its participants, a matter specifically discussed in the first interview. Annoreno told the same tale from the start and, in subsequent interviews, simply expanded on the details.

I find, too, that Annoreno does not suffer from the kind of low intelligence that would interfere with his capacity to understand and waive his constitutional rights. There was no expert testimony offered to support a claim that he was unable to understand or recall the warnings given him on the first day. There was nothing in the testimony at the hearing that would suggest that these relatively simple tasks were beyond his mental ability. He made a rational decision to cooperate, either because (1) he thought helping the agents was the right thing to do; (2) he thought his cooperation would benefit him; (3) he thought the agents, having access to his computers, would know what he did anyway; or (4) he believed two or three of those things.

I find that the thrice given warnings at the beginning of the process were adequate to satisfy the obligations *Miranda* imposes on law enforcement officers. The Government is correct when it says "The subsequent two interviews at issue were conducted within one and two days of Annoreno's receipt of these [three sets of] warnings and waiver of his rights, respectively, and during a continuum of cooperation that Annoreno never indicated he wished to bring to an end." No new warnings were needed where multiple warnings were given and properly waived, and Annoreno was a willing participant in interviews, the terms of which consistently remained those he himself adopted.

There is no *Miranda* violation here.

**Rights under *McNabb-Mallory***

This doctrine, embodied in Rule 5, was, relatively speaking, rarely applied and nearly moribund as a crucial element in suppression hearings,[2] that is, until this last Spring when the Supreme Court handed down *Corley v. United States,* 129 S. Ct. 1558, 1571 (2009). *Corley* decreed that, for any confession secured more than six hours after arrest and before an initial court appearance, the statement must be suppressed if the particular delay was unreasonable or unnecessary.

The first statement was made before the six hours had expired. The later two were not, and for purposes of this motion, I assume they are separate confessions. I find that Annoreno

---

[2] See *United States v. Spruill,* 296 F. 3d 580, 590 (7th Cir. 2002) (confession taken after six hours of detention "is merely another factor" in deciding whether a confession was voluntary) (citation omitted); compare *United States v. Wilson,* 838 F.2d 1081 (9th Cir. 1988) (twenty-hour delay held to be unreasonable). Many practitioners thought that Congressional policy diminished the significance of the doctrine almost to the vanishing point. See 18 U.S.C. § 3501(c). The division of opinion on the subject was noted but not resolved in *United States v. Alvarez-Sanchez,* 511 U.S. 350, 355-56 (1994).

waived his rights to prompt presentment.  I am unaware of any leading case directly addressing

the ability to waive the right, however, of all the rights accorded a suspect under interrogation,

the one that offers the strongest case against permitting waiver is the *Massiah* rule barring

interrogation of certain suspects after the commencement of formal proceeding.  *See Massiah v.*

*United States,* 377 U.S. 201, 206 (1964).  But waiver of this right is allowed.  *See Patterson v.*

*Illinois,* 487 U.S. 285, 291 (1988); *see also United States v. Mezzanatto,* 513 U.S. 196, 201

(1995).

I conclude that the right to prompt presentment can be waived.[3]   And I find that

Annoreno did knowingly and voluntarily waive that right in writing.  The first waiver occurred

within four hours of his arrest and came after clear written warnings.[4]  However, even without

the waiver, the evidence shows that the delay was neither unreasonable nor unnecessary.

Annoreno deeply incriminated himself within the first six hours of custody.  There was no

need to delay presentment for the purposes of getting a confession.  *See Corley,* 129 S.Ct.  at

1563; *United States v. Garcia-Hernandez,* 569 F.3d 1100, 1106 (9th Cir. 2009) ("a delay is

unreasonable and unnecessary when it is of a nature to give opportunity for the extraction of a

confession") (citation and quotations omitted).  The further interviews were, for the far greater

---

[3] *United States v. Binder*, 769 F.2d 595 (9th Cir. 1985) is another iteration of that circuit's
rule that a valid *Miranda* waiver also waives prompt presentment.  That may not be true
anymore, but the premise of the opinion is that presentment rights can be waived.  Another Ninth
Circuit unreported opinion upheld a waiver of Rule 5 (a) rights in light of an explicit waiver,
though it is unclear that the panel relied upon the *Miranda* waiver as well. *See United States v.*
*Brooks,* 2003 WL 21147412 (9th Cir. 2003).

[4] The form told Annoreno that he had "the right to be taken without unnecessary delay
before the nearest available federal magistrate judge..."  He waived his rights under Rule 5 (a)
"for the purpose of assisting Special Agents of the United States Customs Service.   When these
efforts have been completed, I understand that I will be taken to...Court."

part, devoted to finding others who were involved in the child pornography circle. This was a purpose that accorded with Annoreno's own wishes as expressed not only to investigators but to his own family. It was not unreasonable for the investigators to try to find out whether and how Annoreno could help find other perpetrators. Neither was the extended time before presentment unnecessary. Annoreno gave them information, and competent investigators would want to check on the reliability of that information. If reliable, the investigators would know that more questions might lead them to more perpetrators and more victims. There was a legitimate need to extend the period before presentment to make the best use of an important source.

I find that the Government has proved that the delay was neither unreasonable nor unnecessary under the rule set forth in *Corley v. United States*. For the foregoing reasons, the motion to suppress statements is denied in its entirety.

ENTER:

_James B. Zagel_

James B. Zagel
United States District Judge

DATE: October 28, 2009